UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                            :

In re:                           :          Chapter 11
                                            :

FRANCIS GROUP HOLDING CORP.,      :          Case No.  1:14-41126-ess
                                          :

                   Debtor.        :          Hon. Elizabeth S. Stong
                                          :
-----------------------------------------------------------X

# JOINT DISCLOSURE STATEMENT TO SECURED CREDITORS SDF8 CBK LLC AND 12-18 WALWORTH STREET LLC'S JOINT PLAN OF LIQUIDATION FOR FRANCIS GROUP HOLDING CORP.

**THIS IS NOT A SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED TO THE BANKRUPTCY COURT FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT.**

**KRISS & FEUERSTEIN LLP**
360 Lexington Avenue, Suite 1200
New York, NY 10017
(212) 661-2900
Jerold C. Feuerstein, Esq.
Kenneth P. Horowitz, Esq.
Jason S. Leibowitz, Esq.

*Attorneys for SDF8 CBK LLC &*
*12-18 Walworth Street LLC*

Dated:  New York, New York
         November 5, 2014

Secured creditors SDF8 CBK LLC ("SDF") and 12-18 Walworth Street LLC ("Walworth", and together with SDF, the "Secured Creditors" or "Plan Proponents") have filed their *Joint Plan of Liquidation for Francis Group Holding Corp.,* dated October 24, 2014 (the "Joint Plan"), with the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court"). This *Joint Disclosure Statement for Secured Creditors Joint Plan of Liquidation for Francis Group Holdings Corp.* (the "Disclosure Statement") is being submitted for the approval of the Bankruptcy Court for use in connection with the Plan filed to sell substantially all of the assets of the estate of Francis Group Holding Corp. (the "Debtor") pursuant to § 1125 of Title 11 of the United States Code (the "Bankruptcy Code").

A copy of the Plan accompanies this Disclosure Statement. A glossary of terms frequently used in this Disclosure Statement is set forth in Article 1 of the Plan.

**The Secured Creditors believe that Confirmation of the Plan is in the best interests of all the Debtor's creditors.**

SUMMARY OF THE PLAN

The Joint Plan provides for the Plan Proponents. or their designated nominees, to purchase the real properties and improvements thereon located at (1) 287 Clarkson Avenue, Brooklyn, New York (Block 5057; Lot 58)(the "Clarkson Property"),[1] (2) 394-396 Rutland Road, Brooklyn, New York (Block 4809; Lot 41)(the "Rutland Property")[2] and (3) 180 Linden Boulevard, Brooklyn, New York 11226 (Block 5088; Lot 12)(the "Linden Property", and together with the Clarkson Property and the Rutland Property, the "Properties")[3] from the Debtor in accordance with the provisions of the Bankruptcy Code, pursuant to a private sale (the "Sale") pursuant to 11 U.S.C. § 363 and Federal Rule of Bankruptcy Procedure 6004(f), with a closing of such Sale immediately following Confirmation of the Plan.

Proceeds generated from the Sale, in addition to the Cash being held by the Receivers (the "Receivership Funds"), if any, will be utilized by the Plan Proponents to fund distributions under the Plan to satisfy all Allowed Claims of creditors of the Debtor in full, plus post-petition interest at four (4%) percent per annum from the Petition Date. The Plan Proponents, or their designated nominees, have agreed to purchase the Properties at the Sale by (i) satisfying and/or credit bidding their amounts of their respective Secured Claims; and (ii) providing an additional cash contribution (the "Cash Contribution") in the amount of $664,000.00 simultaneously with the closing of the Sale. For the avoidance of doubt, each Plan Proponent will satisfy only those Allowed Claims of the Debtor which are specific to their respective relationship to the property or properties to which it holds a secured claim, and their respective loans with the Debtor. Neither Plan Proponent shall accept or bear any responsibility for obligations of the Debtor with respect to the other Plan Proponent, except, that the Plan Proponents have agreed to share in the payment of Bankruptcy Fees, Allowed Claims of creditors in Class 1 and Class 7 and for allowed Administrative Claims.

---

[1] Upon information and belief, the Property consists of a four (4) story building containing eight (8) residential apartment units.
[2] Upon information and belief, the Property consists of a four (4) story building containing fifteen (15) residential apartment units.
[3] Upon information and belief, the Property consists of a four (4) story building containing thirty-six (36) residential apartment units.

The Cash Contribution and the Receivership Funds shall be utilized to pay all Allowed Claims, including Administrative Claims and Professional Fees, in full plus post-petition interest at four (4%) percent per annum from the Petition Date.  Any remaining Receivership Funds, if any, shall be turned over to the respective Plan Proponents by the respective Receivers.

Through the Sale, the Plan Proponents, or their nominees, shall take title to the Properties free and clear of all liens, claims and encumbrances on confirmation, except that at its election ownership shall be subject to the respective outstanding mortgages.

The table below provides a summary of the classification and treatment of Claims and Interests under the Plan.  The figures set forth in the table below represent the Plan Proponents best estimate of the total amount of Claims and Interests filed or scheduled in this Case.  These estimates have been developed by the Plan Proponents based on an analysis of the Schedules filed by the Debtor, documents provided by the Debtor's principal, Proof of Claims filed by Creditors, and certain other documents of public record.  Although the Plan Proponents believe that the amounts of the Claims set forth below are substantially correct, there can be no assurance that Claims and Interests will be allowed by the Bankruptcy Court in the amounts set forth below:

| Class | Claim/Interest | Treatment of Claim/Interest | Estimated Amount of Allowed Claims or Interests[4] |
|---|---|---|---|
| N/A | Bankruptcy Fees | NA | $12,000.00 |
| 1 | Priority Tax Claims (NYS) | Unimpaired | $12,150.00 |
| 2 | SDF Secured Claim - Clarkson | Impaired | $662,970.38[5] |
| 3 | SDF Secured Claim - Rutland | Impaired | $1,000,796.47[6] |
| 4 | Walworth Secured Claim | Impaired | $2,464,877.90[7] |
| 5 | NY Claims (SDF) | Unimpaired | $38,389.74 |
| 6 | NY Claims (Walworth) | Unimpaired | $528,771.72 |
| 7 | General Unsecured Claims | Unimpaired | $11,400.00 |
| 8 | Equity Interests | Impaired | $0.00 |

In furtherance of the Plan, and in addition to sums being held by the State Court appointed Receivers, the Secured Creditors have agreed to provide Cash necessary to fund distributions under the Plan as follows: (1) payment to governmental units in the full amount of their Allowed Secured Claims for real estate taxes and water and sewer use charges; (2) payment to the Secured Creditors in the full amount of each of their Secured Claims; (3) payment in full to amounts due to and

[4] The amounts set forth in this schedule are not, and should not be deemed admissions by SDF as to the validity or amount of any claim and SDF reserves all rights to object to any claim in this case.
[5] Through and including October 22, 2014.
[6] Through and including October 22, 2014.
[7] Through and including October 22, 2014.

claims of (a) the Office of the United States Trustee (b) Holders of Priority Tax Claims (c) Holders of Priority Claims (d) Allowed Administrative Creditors; and (e) Holders of Unsecured Claims.

**CONFIRMATION OF THE PLAN**

Pursuant to § 1128 of the Bankruptcy Code, the Bankruptcy Court has scheduled a combined hearing to consider approval of this Disclosure Statement and Confirmation of the Plan, **on _____, 2014 at _____ p.m., Eastern Standard Time, in the United States Bankruptcy Court for the Eastern District of New York, 271 Cadman Plaza East, Courtroom 3585, Brooklyn, New York 11021.**   The Bankruptcy Court has directed that objections, if any, to the Approval of the Disclosure Statement or Confirmation of the Plan be filed and served on or before _____ at __:00 p.m. EST.

At the Confirmation Hearing, the Bankruptcy Court will determine whether the requirements of § 1129(a) of the Bankruptcy Code have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan.  The Plan Proponents intend to seek Confirmation of the Plan at the Confirmation Hearing. **The Plan Proponents believe that the Plan satisfies all applicable requirements of § 1129(a) of the Bankruptcy Code**. Confirmation makes the Plan binding upon the Debtor, its Interest Holders, all Creditors, and other parties regardless of whether they have objected to the Plan.  Since no classes of claims are impaired under the Plan, all classes of claims are deemed to have accepted the Plan.

As of the Effective Date, all holders of Claims or Interests will be precluded from asserting any Claim against the Plan Proponents, the Debtor, or the Debtor's assets or Property or other interests in the Debtor based on any transaction or other activity of any kind that occurred before the Confirmation Date except as otherwise provided in the Plan.

**NO VOTING – SUMMARY**

**THE PLAN PROVIDES FOR PAYMENT TO EACH CLASS OF CREDITORS HOLDING ALLOWED CLAIMS IN FULL PLUS POST-PETITION INTEREST FROM THE PETITION DATE AT FOUR (4%) PERCENT PER ANNUM. THERE ARE NO CREDITORS HOLDING CLAIMS THARE ARE IMPAIRED, OR THAT ARE ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN, OTHER THAN THE PLAN PROPONENTS WHICH HAVE WAIVED THIS RIGHT.**

**THIS DISCLOSURE STATEMENT HAS BEEN PREPARED BY THE PLAN PROPONENTS.  THE STATEMENTS AND OPINIONS SET FORTH HEREIN ARE THOSE OF THE PLAN PROPONENTS, AND NO OTHER PARTY HAS ANY RESPONSIBILITY WITH RESPECT THERETO.**

**THE PLAN HAS NOT BEEN APPROVED OR DISAPPROVED BY ANY BANKRUPTCY COURT, THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION NOR HAS THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION PASSED UPON THE FAIRNESS OR MERITS OF THE PLAN OR UPON THE**

ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT. ANY REPRESENTATION TO THE CONTRARY IS UNLAWFUL

NOTICE TO HOLDERS OF CLAIMS AND INTERESTS

This Disclosure Statement is being furnished by the Plan Proponents to the Debtor's known creditors pursuant to § 1125(b) of the Bankruptcy Code. The Plan has been filed with the Bankruptcy Court and is incorporated herein by reference. Parties in interest may view the Plan on the internet at http://www.nyeb.uscourts.gov.[8]

The purpose of this Disclosure Statement is to enable you, as a Creditor to make an informed decision in exercising your right to consider whether to object to the Plan.

The historical information concerning the Debtor has been prepared using certain filings made with the Bankruptcy Court. The estimates of Claims and Interests set forth herein may vary from the final amounts of Claims or Interests allowed by the Bankruptcy Court. However, the Plan provides for the allowance of the (i) SDF Secured Claim – Clarkson ($662,970.38), (ii) SDF Secured Claim – Rutland ($1,000,796.47) and (iii) Walworth Secured Claim ($2,464,877.90) in full as secured by the respective Properties.

Notwithstanding any provision of the Plan to the contrary, definitions and descriptions contained herein respecting pre-Petition documents, agreements, or claims are provided solely for the purpose of identification and classification thereof and do not constitute an admission by the Plan Proponents of the existence, validity, allowance, or amount of any such claim, document or agreement. The Plan Proponents expressly reserve the right to challenge the existence, validity, allowance, or amount of any such claim, document or agreement.

This Disclosure Statement contains a summary of certain provisions of the Plan and the transactions contemplated thereunder, as well as descriptions of certain other related documents. While the Plan Proponents believe that these summaries are fair and accurate, such summaries are qualified to the extent that they do not set forth the entire text of such documents. Reference is made to the Plan and the documents referred to herein and therein for a complete statement of the terms and provisions thereof. In the event of any inconsistency between the terms of the Plan and this Disclosure Statement, the terms of the Plan shall be controlling. In reviewing the Plan and this Disclosure Statement, the reader should give special attention to "RISK FACTORS." No statements or information concerning the Debtor or its assets, results of business operations or financial condition are authorized by the Plan Proponents, other than as set forth in this Disclosure Statement, its exhibit(s) and the Plan.

The statements contained in this Disclosure Statement are made as of the date hereof unless another time is specified herein. The delivery of this Disclosure Statement shall not create, under any circumstances, an implication that there has been no change in the facts set forth herein since the date hereof.

---

[8] A password is necessary for access to view documents on the Internet.

This Disclosure Statement is intended for the sole use of Creditors and Interest Holders to be informed about the Plan. Each holder of a Claim or Interest should review this Disclosure Statement, its exhibit(s) and the Plan. Holders of Claims or Interests are urged to consult with their own legal and financial advisors.

Solicitations of votes to accept or reject the Plan will not be made by the Plan Proponents in accordance with this Disclosure Statement and § 1125 of the Bankruptcy Code as pursuant to § 1126(f) of the Bankruptcy Code, all classes of claims are conclusively presumed to have accepted the Plan. No Person has been authorized to use or promulgate any information concerning the Debtor or its business or the Plan, other than the information contained in this Disclosure Statement and the exhibits hereto. You should not rely on any information relating to the Debtor or its business or the Plan other than that contained in this Disclosure Statement and the exhibits hereto.

### PLAN PROPONENTS' RECOMMENDATION

In the Plan Proponents' opinion, the treatment of Creditors under the Plan provides a greater recovery than is likely to be achieved under any other alternatives, including liquidation under Chapter 7. See "ALTERNATIVES TO THE PLAN." Since the Plan provides for full payment plus interest of all Allowed Claimholders, § 1129(a)(7) of the Bankruptcy Code has been satisfied as creditors are not entitled to be paid more than one hundred (100%) percent plus interest on account of their claims.

### BACKGROUND

#### THE DEBTOR

The Debtor's business consists of the ownership and operation of the Properties, and the Debtor is a New York Domestic Business Corporation. As explained more fully below, the Property generates substantially all of the Debtor's income and on which Property, no substantial business is being conducted by the Debtor, other than the business of operating the Properties and activities incidental thereto. The Plan Proponents make no representations as to whether the residential units at the property are subject to rent regulation such as the New York City Rent Stabilization Code. Upon information and belief, the Debtor's sole source of income is from rents generated by the Property. Upon information and belief, the Debtor's president, Roger Francis, managed the Properties until management of the Property was taken over by the respective Receivers as set forth in greater detail herein below. Included as an addendum to the Debtor's Statement of Financial Affairs [docket item 35], the Debtor discloses, among other things, that its equity security holders are Roger Francis (President), Rudolph Francis (Vice President) and Roy Francis (Secretary), each retaining 1/3 interest in the Debtor.

#### SDF & THE CLARKSON LOAN

On or about January 25, 2007, Washington Mutual Bank, a federal association ("WAMU"), made a loan to the Debtor, in the original principal sum of $320,000.00 (the "Clarkson Loan"). The Clarkson Loan was evidenced by a Promissory Note (the "Clarkson Note") dated January 25,

2007, which was executed by the Debtor, through its Vice President, Roger Francis ("Francis").

To secure repayment of the indebtedness evidenced by the Clarkson Note, on or about January 25, 2007, Francis, on behalf of the Debtor, further executed and delivered to WAMU, a Mortgage, Security Agreement, Assignment of Leases and Rents and Fixture Filing (the "Clarkson Mortgage"), which encumbered the Clarkson Property in the principal sum of $320,000.00. The duly executed Mortgage was recorded with the Office of the City Register of the City of New York, County of Kings (the "City Register") on June 25, 2007 under CRFN 2007000327538.

On or about January 25, 2010, the Clarkson Note, Clarkson Mortgage and Clarkson Loan documents were assigned by the Federal Deposit Insurance Corporation ("FDIC") as Receiver for WAMU, formerly known as Washington Mutual Bank, FA, to Fannie Mae pursuant to an Assignment of Security Instrument (the "Clarkson Fannie Mae Assignment"), which was recorded with the City Register's Office on January 28, 2010 under CRFN 2010000031639.

On or about August 5, 2011, the Clarkson Note, Clarkson Mortgage and Clarkson Loan documents were assigned by Fannie Mae to JPMorgan Chase Bank, N.A. ("Chase") pursuant to an Assignment of Security Instrument ("Clarkson Chase Assignment"), which was recorded with the City Register's Office on August 22, 2011 under CRFN 2011000294852.

On or about June 14, 2012, the Clarkson Note, Clarkson Mortgage and Clarkson Loan documents were assigned by Chase to the SDF pursuant to an Assignment of Mortgage ("SDF8 Assignment - Clarkson"), which was recorded with the City Register's Office on July 31, 2012 under CRFN 2012000300871. Additionally, the Clarkson Note was duly endorsed by Chase to the SDF, as evidenced by Allonge, dated June 14, 2012, a copy of which is annexed to the Note. Thus, SDF is the due owner and holder of the Clarkson Note and Clarkson Mortgage.

The Debtor defaulted under the terms of the Clarkson Note and Clarkson Mortgage by, failing to tender the monthly mortgage payment as required under the terms of the Clarkson Note and Clarkson Mortgage on or about August 1, 2009 through October 1, 2009, and all subsequent payments (the "Clarkson Default").

As a result of the Clarkson Default and the Debtor's failure to cure same, on November 8, 2012, SDF commenced an action to foreclose the Clarkson Mortgage (the "Clarkson Foreclosure Action") under Index No. 503714/2012, by filing a Summons, Verified Complaint and Notice of Pendency in the Kings County Supreme Court, State of New York (the "State Court").

In response thereto, on or about February 20, 2013, the Debtor, through its counsel, Umar A. Sheikh, Esq., interposed a Verified Answer (the "Clarkson Answer") consisting of general denials and eight baseless affirmative defenses.

On June 7, 2013, SDF filed its Motion for Summary Judgment (the "Clarkson MSJ"), seeking, *inter alia,* to strike the Answer and Affirmative Defenses contained therein, which was opposed by the Debtor on October 17, 2013 and remains *sub judice*.

By Order dated July 23, 2013, the State Court entered the *Amended Order Appointing A Temporary Receiver In a Foreclosure Action* and thereby appointed, Lawrence Price (the "Clarkson Receiver") as temporary receiver over the Clarkson Property. Notably, in connection

therewith, custody, possession and control of the Property was turned over to the Clarkson Receiver.  As of the date hereof, the Clarkson Receiver remains in custody, possession and control of the Clarkson Property.

## SDF & THE RUTLAND LOAN

On or about January 25, 2007, WAMU, made a loan to the Debtor, in the original principal sum of $480,000.00 (the "Rutland Loan"). The Rutland Loan was evidenced by a Promissory Note (the "Rutland Note") dated January 25, 2007, which was also executed by the Debtor, through Francis.

To secure repayment of the indebtedness evidenced by the Rutland Note, on or about January 25, 2007, Francis, on behalf of the Debtor, further executed and delivered to WAMU, a Mortgage, Security Agreement, Assignment of Leases and Rents and Fixture Filing (the "Rutland Mortgage"), which encumbered the Rutland Property in the principal sum of $480,000.00.  The duly executed Rutland Mortgage, which was recorded with the City Register's Office on June 25, 2007 under CRFN 2007000327396.

On or about January 25, 2010, the Rutland Note, Rutland Mortgage and Rutland Loan documents were assigned by the FDIC as Receiver for WAMU, to Fannie Mae pursuant to an Assignment of Security Instrument ("Rutland Fannie Mae Assignment"), which was recorded with the Register's Office on January 28, 2010 under CRFN 2010000031638.

On or about August 5, 2011, the Rutland Note, Rutland Mortgage and Rutland Loan documents were assigned by Fannie Mae to Chase pursuant to an Assignment of Security Instrument ("Rutland Chase Assignment"), which was recorded with the Register's Office on July 27, 2011 under CRFN 2011000265196.

On or about June 14, 2012, the Rutland Note, Rutland Mortgage and Rutland Loan documents were assigned by Chase to SDF pursuant to an Assignment of Mortgage ("SDF8 Assignment - Rutland"), which was recorded with the City Register's Office on August 2, 2012 under CRFN 2012000305976.  Thus, SDF is the due owner and holder of the Rutland Note and Rutland Mortgage.

The Debtor defaulted under the terms of the Rutland Note and Rutland Mortgage by, failing to tender the monthly mortgage payment as required under the terms of the Rutland Note and Rutland Mortgage on or about July 1, 2009 through October 1, 2009, and all subsequent payments (the "Rutland Default").

As a result of the Rutland Default and the Debtor's failure to cure same, on November 7, 2012, SDF commenced an action to foreclose the Rutland Mortgage (the "Rutland Foreclosure Action") under Index No. 503694/2012, by filing a Summons, Verified Complaint and Notice of Pendency in the State Court.

In response thereto, on or about February 20, 2013, the Debtor, through its counsel, Umar A. Sheikh, Esq., interposed a Verified Answer (the "Rutland Answer") consisting of general denials and eight baseless affirmative defenses.  On May 30, 2013, SDF filed its Motion for

Summary Judgment (the "Rutland MSJ"), seeking, *inter alia,* to strike the Rutland Answer and Affirmative Defenses contained therein, which was opposed by the Debtor on October 19, 2013 and remains *sub judice*.

As of the date hereof, the Debtor remains in custody, possession and control of the Rutland Property.

## WALWORTH & THE LINDEN LOAN

On or about January 25, 2007, WAMU, made a loan to the Debtor, in the original principal sum of $1,100,000.00 (the "Linden Loan"). The Walworth Loan was evidenced by an Amended and Restated Promissory Note (the "Linden Note") dated August 3, 2004, which was executed by the Debtor, through Francis.

To secure repayment of the indebtedness evidenced by the Linden Note, on or about January 25, 2007, Francis, on behalf of the Debtor, further executed and delivered to WAMU, an Amended and Restated Mortgage, Security Agreement, Assignment of Leases and Rents, and Fixture Filing, which encumbered the Linden Property in the principal sum of $1,100,000.00 (the "Linden Mortgage").  The duly executed Linden Mortgage was recorded with the Office of the City Register on June 25, 2007 under CRFN 2007000327462.

The Linden Loan, Linden Note and Linden Mortgage were thereafter assigned by WAMU to U.S. Bank National Association, A National Bank, as Trustee for the Holders of WAMU Commercial Mortgage Securities Trust 2007-SL3, Commercial Mortgage Pass-Through Certificates Series 2007-SL3 ("US Bank") pursuant to a certain Assignment of Mortgage (the "US Bank Assignment"), dated December 18, 2007 and recorded in the City Register on December 28, 2007, as CRFN 2007000630981.

The Linden Loan, Linden Note and Linden Mortgage were thereafter assigned by US Bank to Walworth pursuant to a certain Assignment of Mortgage and Other Loan Documents, dated November 30, 2011 (the "Walworth Assignment") and recorded in the City Register on December 14, 2001, as CRFN 2011000436542.

The Debtor defaulted under the terms of the Linden Note and Linden Mortgage by failing and/or refusing to make the monthly mortgage payment as required under the terms of the Note and Mortgage on or about November 1, 2008 (the "Linden Default").

As a result of the Linden Default and the Debtor's failure to cure same, on or about March 17, 2009, U.S. Bank commenced an action to foreclose the Mortgage (the "Linden Foreclosure Action") under Index No. 6391/2009, by filing a Summons, Verified Complaint and Notice of Pendency in the State Court.

By Order Appointing Receiver (the "Linden Receiver Order") of the State Court dated April 22, 2009, Harry Horowitz (the "Linden Receiver") was appointed as Temporary Receiver over the Linden Property.  Notably, custody, possession and control of the Linden Property was briefly turned over by the Receiver to the Debtor for a period of time when the Debtor filed its first petition for Chapter 11 bankruptcy relief (the "Debtor's Third Filing") on April 16, 2010.

Notwithstanding, the Receiver regained custody, possession and control of the Property upon the dismissal of the Debtor's Third Filing, which occurred on or about May 23, 2011.

Thereafter, on or about October 4, 2011, the Linden Receiver moved the State Court, to appoint secondary fiduciaries and related reliefs. In connection therewith, the Linden Receiver noted for the State Court that upon commencement of the receivership, not less than 180 violations were assessed against the Linden Property from the New York City Department of Housing Preservation and Development ("HPD") and that under the Debtor's management, the Linden Property was listed on HPD's 200 worst multiple dwelling buildings.

On November 26, 2012 the State Court entered a Judgment of Foreclosure and Sale dated November 26, 2012 (the "JFS"), awarding Walworth the sum of $2,047,498.47 as of August 21, 2012, plus interest due thereon, and entitling Walworth to foreclose on the mortgages secured by the Linden Property. As of the date hereof, the Linden Receiver remains in custody, possession and control of the Linden Property.

In connection with the entry of the JFS a foreclosure sale of the Linden Property was scheduled for March 13, 2014 (the "Linden Sale"), and after threatening counsel for Walworth that the Debtor would be filing an Order to Show Cause before the State Court, the Debtor instead filed its petition and schedules merely one (1) hour prior to the time that a sale of the Linden Property was scheduled to occur, also on March 13, 2014.

### THE DEBTOR'S HISTORY OF ABUSIVE BANKRUPTCY FILINGS

Prior to the instant filing, the Debtor herein, was a debtor in not less than three (3) prior Chapter 11 filings before this Court. The Debtor's first Chapter 11 filing before this Court was on March 2, 2004 under Case No. 1:04-13002-jf (the "First Filing"). In the First Filing, the Debtor was represented by Jeffrey Rosenberg, Esq. ("Rosenberg") of Pitnick & Margolin LLP. Notably, Rosenberg currently serves as counsel to the Debtor, although no order has been entered approving such retention. The First Filing was dismissed pursuant to 11 U.S.C. § 1112(b) at the Debtor's request by Order of this Court dated July 30, 2004 ("First Dismissal Order").

Thereafter, the Debtor filed its second petition for Chapter 11 bankruptcy relief before this Court on April 16, 2010 under Case No. 1:10-43296-jf (the "Second Filing"). In the Second Filing, the Debtor was represented by Mark Frankel, Esq. of Backenroth Frankel & Krinsky LLP. The Second Filing was dismissed on May 23, 2011, pursuant to 11 U.S.C. § 1112(b) on motion of the United States Trustee (the "UST's Motion") for reasons which included, but were not limited to an absence of adequate stewardship of that case, failure to pay statutory fees, failure to comply with mandatory reporting requirements, and failure to file any written opposition to the UST's Motion ("Second Dismissal Order").

On July 11, 2011, the Debtor filed its third petition for Chapter 11 bankruptcy relief before this Court under Case No. 1:11-45999-jf (the "Third Filing"). In the Third Filing, the Debtor was represented by Gerard Karlen, Esq. The Third Filing was dismissed pursuant to 11 U.S.C. § 1112(b)(1) on motion of US Bank by Order of this Court dated August 10, 2011 ("Third Dismissal Order").

Notably, the Third Dismissal Order dismissed the Third Filing with prejudice for a period of two (2) years from the date of the Third Dismissal Order, pursuant to 11 U.S.C. § 1112(b)(1), after a finding of substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation.  The Third Dismissal Order further provided:

> "[T]here has been "gross mismanagement of the estate" pursuant to subsection (b)(4)(B); there has been "failure to maintain appropriate insurance that poses a risk to the estate or to the public" pursuant to (b)(4)(C); and for "failure to timely provide information or attend meetings reasonably  requested by the United States Trustee" pursuant to (b)(4)(H); and this case is dismissed with prejudice to refilling for two years from the entry of this order, pursuant to 11 U.S.C. § 105(a), based on this Court's determination that this case was filed in bad faith, as it was filed: (i) less than 60 days after the dismissal of debtor's prior chapter 11 case, Case No. 10-43296 (JF) (the "Prior Case"); (ii) 11 days after the Court denied a motion to reconsider dismissal of the Prior Case; and (iii) before the Court closed the Prior Case, with no bona fide change of circumstance warranting debtor's re-filing." (emphasis added).

In addition, the Third Dismissal Order restored the Receiver to custody, possession and control of the Property pursuant to 11 U.S.C. § 543(d). Following a similar pattern of disregard for the policies and procedures of the Bankruptcy Court, the Debtor filed its instant petition on the Petition Date, without any counsel.  In addition, the Debtor has failed to file any schedules or file any other required documents required of a Chapter 11 debtor or seek an extension thereof, and the time for the Debtor to take such action has elapsed.

Furthermore, as of the date of this Disclosure Statement, the Debtor has failed to tender any payments to any of the Secured Creditors.

## UNAUTHORIZED TRANSFERS OF THE PROPERTIES BY THE DEBTOR

As a blatant demonstration of the Debtor's bad faith, in addition to the repeated attempts to delay, hinder and defraud the Secured Creditors by way of the Debtor's history of serial bankruptcy filings, the Debtor also attempted to evade its creditors by transferring the Properties to unrelated third party entities.  For instance, by deed dated August 8, 2012 (the "Clarkson Deed"), without the permission or knowledge of SDF, and in violation of the terms of the Clarkson Mortgage, the Debtor, by Roger Francis, transferred its right, title and interest in and to the Clarkson Property, to an entity known as 287 Clarkson Avenue Corp. for what appears to be the sum of $250,000.00.  The Clarkson Deed was recorded with City Register on December 27, 2012 as CRFN 2012000504877.

Then, by deed dated August 8, 2012 (the "Rutland Deed"), without the permission or knowledge of SDF, and in violation of the terms of the Rutland Mortgage, the Debtor, by Roger Francis, transferred its right, title and interest in and to the Rutland Property, to an entity known as 394 Rutland Road Corp. for what appears to be the sum of $250,000.00.  The Rutland Deed, was thereafter recorded with City Register on September 28, 2012 as CRFN 2012000385485.

In addition, by deed dated August 23, 2013 (the "Linden Deed"), without the permission or knowledge of Walworth, the Debtor, by Francis, transferred all of its right, title and interest in and to the Linden Property, to an entity known as 180 Linden Blvd. Corporation.  The Linden Deed was recorded with City Register on September 10, 2013 as CRFN 2013000368385.

While the respective Foreclosure Actions were pending, on March 13, 2014 (the "Petition Date") merely one (1) hour before the Linden Sale, the Debtor filed its instant *pro se* petition for Chapter 11 bankruptcy relief before this Court under Case No. 1:14-41126-ess.  The instant filing represents the Debtor's Fourth (4th) petition for Chapter 11 bankruptcy relief filed before this Court and resulted in a stay of the Foreclosure Action.

## SIGNIFICANT EVENTS IN THIS CHAPTER 11 CASE

### POST-PETITION TRANSFERS OF THE PROPERTIES TO THE DEBTOR

By three deeds dated March 14, 2014 (one day after the Petition Date), all three Properties were allegedly re-conveyed back to the Debtor through three (3) separate deeds (the "Deeds"), all of which were executed by Sylvia Richards ("Richards") and thereafter recorded with the City Register.  Although Richards executed the Deeds, it remains unclear how Richards was authorized to execute any of the Deeds.

### RETENTION OF PROFESSIONALS

11 U.S.C. § 327(a) of the Bankruptcy Code provides that the Debtor, with the court's approval, may employ one or more accountants or other professional persons that do not hold or represent an interest adverse to the estate and that are disinterested persons to represent or assist the Debtor in carrying out its duties under the Bankruptcy Code.  11 U.S.C. § 327(a).

The Debtor filed its petition *pro se.*  However*,* on June 23, 2014 filed an application to retain the services of Rosenberg. Notwithstanding, no order formally retaining Rosenberg has been entered to date.

### THE PETITION AND SCHEDULES

In its Petition and Schedules, the Debtor identifies the Secured Creditors as its only secured creditors.  In addition, the Debtor identifies the New York City Department of Finance as holding an unsecured priority claim and Consolidated Edison as the Debtor's only unsecured creditor holding a claim in the amount of $11,214.00. In accordance with the Debtor's disclosures, there have been a total of six (6) timely filed claims against the Debtor's estate.

Based on the Petition and Schedules and related documents, the Debtor's sole source of gross income is derived from collecting rents from tenants residing at the Properties.

### OPERATING REPORTS

Pursuant to the requirements of the Office of the United States Trustee for the Eastern District of New York, the Debtor has filed monthly operating reports ("MOR's") with the Bankruptcy Court for the periods from the Petition Date through August 2014 only.

The MOR's fail to indicate that the Debtor is coordinating any of the information contained therein with either receiver at the Clarkson Property or the Linden Property. Instead, they seem only to contain a nominal income the Debtor is deriving from the Rutland Property with income and expenses that are generally in amounts less than $10,000.00. Copies of the monthly reports which the Debtor has filed may be obtained from the Bankruptcy Court during normal business hours, or may be obtained upon written request made to counsel for the Debtor.

## BAR DATE

In accordance with the requirements of § 521 of the Bankruptcy Code and Bankruptcy Rule 1007, the Debtor filed its Schedules of assets and liabilities, including schedules of all of its known creditors and the amounts and priorities of the Claims the Debtor believes are owed to such creditors. On July 9, 2014, the Bankruptcy Court entered an Order [docket item 64] fixing September 10, 2014 as the last date for filing Proofs of Claim (governmental and non-governmental) in the Debtor's case (the "Bar Date"), which was served upon all known creditors by the Debtor pursuant to the Debtor's Certificate of Service filed on July 23, 2014 [docket item 67].

The Plan provides that a party has thirty (30) days from the Effective Date to file objections to filed Claims, unless further extended by court order. If neither the Plan Proponents nor the Debtor file an objection to a properly filed proof of claim on or before thirty (30) days from the Effective Date (or as extended by the court) then such Claim will be deemed Allowed and will be entitled to the full Distribution under the Plan on account of its Allowed Claim. At this time, the Plan Proponents do not intend on objecting to any timely filed claim.

## THE EXCLUSIVITY PERIOD

The Debtor's exclusive right to file a plan of reorganization in this Case expired on July 11, 2014.

## PLAN PROPONENTS' MOTIONS FOR RELIEF FROM THE AUTOMATIC STAY

On April 3, 2014, Walworth filed its Motion for Relief from the Automatic Stay (the "Walworth Motion") [docket item 11]. Similarly, on April 9, 2014, SDF filed Motions for Relief from the Automatic Stay with respect to the Clarkson Property (the "Clarkson Motion") [docket item 13] and also the Rutland Property (the "Rutland Motion" and together with the Clarkson Motion and the Walworth Motion, the "Motions") [docket item 14]. Since the time the Motions were first made returnable on April 24, 2014 and May 1, 2014, the Motions have since been administratively adjourned by the Court to June 3, 2014, July 2, 2014, August 20, 2014, September 23, 2014, October 6, 2014, October 15, 2014 and November 18, 2014. Significantly, although the Motions for Relief have been fully briefed by the Secured Creditors and the Debtor, the Debtor's responses in opposition, *inter alia*, fail to address or rebut the very significant point of contention that the Secured Creditors' claims to entitlement must be granted based upon the fact that the

Properties were not part of the Debtor's estate on the Petition Date, and are therefore not entitled to protection by the automatic stay.

Notwithstanding, since the commencement of this case, Debtor's counsel has been successfully buying the Debtor significant amounts of time by presenting to the Court that the Debtor has been on the cusp of obtaining refinancing in an amount sufficient to satisfy each of the three (3) loans with the Secured Creditors and all other creditors in full. As a result, the Court has repeatedly and administratively adjourned the Plan Proponents' Motions to accommodate the Debtor.

As part of the Debtor's attempt to rescue all three Properties, at the last status hearing held before the Court on October 15, 2014, Debtor's counsel advised that the Debtor has been approved for financing in the amount of $4.5MM and that the Debtor has just realized that it does not have enough money to satisfy SDF, Walworth and all other creditors in full, in light of the extremely large outstanding property tax arrears ($528,771.72) that have accumulated against the Linden Property. As a result, the Debtor advised that it is contemplating either moving to dismiss this case or filing some form of cram down plan. In response, the Court provided the Debtor with a deadline by which it must file its plan or a motion to dismiss this case of November 7, 2014.

**OTHER APPLICATIONS**

On July 11, 2014, Orders were entered permitting SDF [docket item 66] and Walworth [docket item 65] to conduct document and deposition discovery of the Debtor by way of Bankruptcy Rule 2004.

On June 23, 2014, the Debtor sought to formally retain Rosenberg. On August 20, 2014, the Debtor filed its application to retain the Brookstone Group as appraiser to the Debtor. On August 20, 2014, the Debtor filed its application to retain JNB Capital as mortgage broker to the Debtor. Each of these application remain pending before the Court.

**SUMMARY OF THE PLAN**

The following summary of the terms of the Plan is qualified in its entirety by reference to the provisions of the Plan, a copy of which accompanies this Disclosure Statement and which is incorporated herein by reference.

**THE PROPOSED SALE**

The Plan provides that the Property shall be sold in a private sale to the Plan Proponents or their designated nominees in satisfaction of the Plan Proponents Secured Claims, plus an additional Cash Contribution by the Plan Proponents of $664,000.00, subject to the approval of the Bankruptcy Court which shall be included in the Confirmation Order.

The Cash Contribution is comprised of SDF Cash contribution of $94,000.00[9] ("SDF's

---

[9] Of this amount, SDF has intended for payment in the following manner: 1) SDF's portion of the anticipated bankruptcy fees ($6,000), 2) SDF's portion of the anticipated Priority Tax Claims (NYS) ($6,075), 3) SDF's portion of NY Claims (SDF) ($39,000), 4) SDF's portion of payment to claims of General Unsecured Creditors ($5,700) and

14

Cash Contribution"), which SDF intends use to satisfy certain allowed claims of creditors of the Debtor's estate as they pertain to the SDF Loans and obligations of the Debtor which fall upon SDF and Walworth, including allowed administrative claims and tax claims which may have been accruing since the commencement of this case.  Similarly, Walworth has secured the Cash sum of $570,000.00,[10] ("Walworth's Cash Contribution"), which it intends use to satisfy allowed claims of all creditors of the Debtor's estate, including allowed administrative claims and tax claims which may have been accruing since the commencement of this case as they pertain to the Walworth Loan and obligations of the Debtor which fall upon Walworth and SDF. Together SDF's Cash Contribution and Walworth's Cash Contribution combine to provide a total cash distribution to the Debtor's creditors in the overall amount of $664,000.00.

The Plan Proponents intend to purchase the Property as a credit against, and in full satisfaction of their Secured Claims as those Secured Claims exist as of the date of the Sale, and to provide an additional Cash Contribution of $664,000.00 at the time of Sale pursuant to 11 U.S.C. §§ 363(b), (f), and (m), to permit a closing to occur as soon as practicable following Confirmation of the Plan.

Proceeds generated from the Sale, in addition to the Receivership Funds, will be utilized by the Plan Proponents to fund Distributions under the Plan as necessary to satisfy one-hundred (100%) percent of all Allowed Claims of creditors of the Debtor in full with post-petition interest at four (4%) percent annum thereon from the Petition Date.  For the avoidance of doubt, each Plan Proponent will satisfy only those Allowed Claims of the Debtor which are specific to their respective relationship to the property or properties to which it holds a secured claim, and their respective loans with the Debtor.  Neither Plan Proponent shall accept or bear any responsibility for obligations of the Debtor with respect to the other Plan Proponent, except, that the Plan Proponents have agreed to share in the payment of Bankruptcy Fees, Allowed Claims of creditors in Class 1 and Class 7 and for allowed Administrative Claims.

Through the Sale, the Plan Proponents, or their nominees, shall take title to the respective Properties free and clear of all liens, claims and encumbrances pursuant to §§ 363(f) and 1123(a)(5) of the Bankruptcy Code.  In addition, the Plan Proponents shall utilize the Cash Contribution plus all remaining Receivership Funds, if any, to pay Allowed Claims.

Upon closing of the Sale, promptly after entry of the Confirmation Order, the Plan Proponents or their nominees, shall take title to the respective Properties free and clear of all liens, claims and encumbrances, except that their election ownership shall be subject to the respective mortgages.  In addition to proceeds received from the Sale of the Properties, the Receivership Funds shall be used to fund the distributions under the Plan to pay Allowed Claims.  The Plan Proponents' authority to purchase the Properties in satisfaction of the amount of their Secured Claims is subject to approval of this Court, which shall be deemed granted upon entry of the

---

5) SDF's portion of outstanding estimated Administrative Claims ($36,500) (which includes $24,000 to expenses of the Clarkson Receiver and $12,500 for payment of SDF's portion of Debtor's counsel's legal fees).

[10] Of this amount, Walworth has intended for payment in the following manner: 1) Walworth's portion of the anticipated bankruptcy fees ($6,000), 2) Walworth's portion of the anticipated Priority Tax Claims (NYS) ($6,075), 3) Walworth's portion of NY Claims (Walworth) ($528,771.72), 4) Walworth's portion of payment to claims of General Unsecured Creditors ($5,700) 5) Walworth's portion of outstanding estimated Administrative Claims ($22,500) (which includes $12,500 for payment of Walworth's portion of Debtor's counsel's legal fees $10,000 and to cover outstanding amounts owed for expenses fees in connection with the Linden Receiver.

Confirmation Order.

The closing of the Sale will take place promptly after entry of the Confirmation Order.  In addition, upon completion of the Sale, Kriss & Feuerstein LLP, the Plan Proponents Disbursing Agent, shall be authorized to execute any and all documents necessary to effectuate the conveyance of the Properties to the Plan Proponents in accordance with the terms of the Plan, including without limitation a Bargain and Sale Deed with Covenants, a Bill of Sale and all required transfer tax returns and ACRIS documents.  Upon the Sale, the Debtor (to the extent the Debtor is in possession of same) and/or the Receivers shall turn over all leases and security deposits to the Plan Proponents or their designee for each of the respective Properties.  Furthermore, on the Effective Date, the Debtor and/or the Receivers will provide the Plan Proponents, or their nominees, an assignment and assumption of all residential and/or commercial leases at the Property and the right to collect any and all rent arrears from such tenants.

**Classification of Claims and Interests**

Classification of claims is governed, in part, by §§ 1122 and 1123(a) of the Bankruptcy Code.  11 U.S.C. § 1123(a) requires that a plan designate classes of claims, requires that the plan specify the treatment of any impaired class of claims, and requires that the plan provide the same treatment for each claim of a particular class, unless the holder of a claim receiving less favorable treatment consents to such treatment. 11 U.S.C. § 1123(a)(1), (3) and (4).  11 U.S.C. § 1122(a) of the Bankruptcy Code provides, subject to an exception for administrative convenience, that "a plan may place a claim or interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class."

Article 3 of the Plan classifies the various Claims against and Interests in the Debtor into Seven (7) classes of Claims and one (1) class of Interests:

Class 1 -    Priority Tax Claims (NYS)
Class 2 -    SDF Secured Claim - Clarkson
Class 3 -    SDF Secured Claim - Rutland
Class 4 -    Walworth Secured Clam
Class 5 -    NY Claims (SDF)
Class 6 -    NY Claims (Walworth)
Class 7 -    General Unsecured Claims
Class 8 -    Equity Interests

Since no classes of claims are impaired under the Plan, holders of all classes of claims and claimholders are conclusively deemed to have accepted the Plan pursuant to § 1126(f) of the Bankruptcy Code and no voting or balloting will be conducted under the Plan.  As set forth in Article 2 of the Plan, pursuant to § 1123(a)(1) of the Bankruptcy Code, certain Administrative Claims against the Debtor have not been classified.  See "SUMMARY OF THE PLAN -- Treatment of Non-Classified Claims."

**Class 1 – Priority Tax Claims (NYS).**  Class 1 consists of all Allowed Claims, other than Administrative Claims or Bankruptcy Fees, of New York State for unpaid and outstanding income and/or corporate taxes allegedly owed by the Debtor.  Certain Claims for taxes

16

and the payment of expenses incurred by the Debtor subsequent to the Petition Date may be entitled to priority treatment under § 507 of the Bankruptcy Code, and are treated elsewhere as non-classified Claims.  See "SUMMARY OF THE PLAN -- Treatment of Non-Classified Claims." Priority Tax Claims asserted by New York State for unpaid corporate taxes amount to $12,150.00 pursuant to a proof of claim filed by New York State.

**Class 2 – SDF Secured Claim - Clarkson**.  Class 2 consists of the SDF Allowed Secured Claim against the Clarkson Property.

**Class 3 – SDF Secured Claim - Rutland.**  Class 3 consists of the SDF Allowed Secured Claim against the Rutland Property.

**Class 4 – Walworth Secured Claim.**  Class 4 consists of the Walworth Allowed Secured Claim against the Linden Property.

**Class 5 – NY Claims (SDF).**  Class 5 consists of (a) the Secured Claim of City of New York Department of Finance for outstanding property taxes in connection with the Clarkson Property and Rutland Property and (b) the Claim of the NYC Office of Administrative Trials and Hearings for environmental control board violations (See Claim 3), as applicable to the Clarkson Property and Rutland Property, and any Allowed Claims which may be filed by New York State.

**Class 6 – NY Claims (Walworth).**  Class 6 consists of (a) the Secured Claim of City of New York Department of Finance for outstanding property taxes in connection with the Linden Property and (b) the Claim of the NYC Office of Administrative Trials and Hearings for environmental control board violations (See Claim 3), as applicable to the Linden Property, and any Allowed Claims which may be filed by New York State.

**Class 7 – General Unsecured Claims.**  Class 7 consists of the General Unsecured Claim of Consolidated Edison Company of New York, Inc. ("ConEd") filed in the amount of $11,400.00.

**Class 8 – Equity Interests.** Class 8 consists of all Equity Interests in the Debtor.

### TREATMENT OF CLAIMS AND INTERESTS CLASSIFIED UNDER THE PLAN

Articles 4 and 5 of the Plan provide for the treatment of Claims classified in Article 3 of the Plan as follows:

**Class 1 – Priority Tax Claims (NYS).**  New York State filed Claim No. 2 in the amount of $12,150.00.  Holders of Class 1 Allowed Claims are unimpaired and are not entitled to vote as their claim will be satisfied in full.  Allowed Claims in Class 1 will be paid in full plus applicable post-petition interest on the Effective Date

**Class 2 - SDF Secured Claim - Clarkson**.  In full satisfaction, release and discharge of the SDF Secured Claim - Clarkson, SDF shall obtain fee title to the Clarkson Property free and clear of all liens, claims and encumbrances by virtue of its purchase of the Clarkson Property through a combination of credit bidding its allowed secured claim and

paying into the Cash Contribution. The SDF Secured Claim – Clarkson was $641,184.04 as of the Petition Date, and may be adjusted to include any and all post-petition charges, penalties, attorney's fees, accrued interest, protective advances and all other sums SDF is entitled to pursuant to the Clarkson Note and Clarkson Mortgage incurred after the Petition Date. SDF shall only be obligated to pay the Cash Contribution at the closing of the Sale of the Clarkson Property. At the closing, the Clarkson Property shall be conveyed to SDF, or its nominee, subject to SDF's existing Clarkson Mortgage of record if SDF so elects. The Class 2 claimholder is impaired to the extent that it is not receiving the full amount of its claim and waives any right to a deficiency against the Debtor. The Class 2 claimholder supports the Plan, as it is a Plan Proponent.

**Class 3 - SDF Secured Claim - Rutland**. In full satisfaction, release and discharge of the SDF Secured Claim - Rutland, SDF shall obtain fee title to the Rutland Property free and clear of all liens, claims and encumbrances by virtue of its purchase of the Rutland Property through a combination of credit bidding its allowed secured claim and paying into the Cash Contribution. The SDF Secured Claim – Rutland was $968,085.20 as of the Petition Date, and may be adjusted to include any and all post-petition charges, penalties, attorney's fees, accrued interest, protective advances and all other sums SDF is entitled to pursuant to the Rutland Note and Rutland Mortgage incurred after the Petition Date. SDF shall only be obligated to pay the Cash Contribution at the closing of the Sale of the Rutland Property. At the closing, the Rutland Property shall be conveyed to SDF, or its nominee, subject to SDF's existing Rutland Mortgage of record if SDF so elects. The Class 3 claimholder is impaired to the extent that it is not receiving the full amount of its claim and waives any right to a deficiency against the Debtor. The Class 3 claimholder supports the Plan, as it is a Plan Proponent.

**Class 4 - Walworth Secured Claim**. In full satisfaction, release and discharge of the Walworth Secured Claim, Walworth shall obtain fee title to the Linden Property free and clear of all liens, claims and encumbrances by virtue of its purchase of the Linden Property through a combination of credit bidding its allowed secured claim and paying into the Cash Contribution. The Walworth Secured Claim was $2,349,622.58 as of the Petition Date, and may be adjusted to include any and all post-petition charges, penalties, attorney's fees, accrued interest, protective advances and all other sums Walworth is entitled to pursuant to the Linden Note and Linden Mortgage incurred after the Petition Date. Walworth shall only be obligated to pay the Cash Contribution at the closing of the Sale of the Linden Property. At the closing, the Linden Property shall be conveyed to Walworth, or its nominee, subject to Walworth's existing Linden Mortgage of record if Walworth so elects. The Class 4 claimholder is impaired to the extent that it is not receiving the full amount of its claim and waives any right to a deficiency against the Debtor. The Class 4 claimholder supports the Plan, as it is a Plan Proponent.

**Class 5 – NY Claims (SDF).** Class 5 consists of (a) the Secured Claim of City of New York Department of Finance for outstanding property taxes in connection with the Clarkson Property and Rutland Property and (b) the Claim of the NYC Office of Administrative Trials and Hearings for environmental control board violations (See Claim 3), as applicable to the Clarkson

Property and Rutland Property.  Allowed Claims in Class 5 will be paid in full plus applicable post-petition interest on the Effective Date.  Class 5 is unimpaired and not entitled to vote.

**Class 6 – NY Claims (Walworth).**  Class 6 consists of (a) the Secured Claim of City of New York Department of Finance for outstanding property taxes in connection with the Linden Property and (b) the Claim of the NYC Office of Administrative Trials and Hearings for environmental control board violations (See Claim 3), as applicable to the Linden Property.  Class 6 is unimpaired and not entitled to vote.

**Class 7 – General Unsecured Claims.**  Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, in full satisfaction, release and discharge of all Allowed Unsecured Claims (including deficiency claims), on the Effective Date, each holder of an Allowed Unsecured Claim shall receive a distribution in an amount equivalent to one-hundred percent (100%) percent of their Allowed Unsecured Claims from the Disbursing Agent plus post-petition interest on account of their Allowed Claims at a rate of four (4%) percent per annum from the Petition Date.  It is estimated that the Allowed Unsecured Claims will not exceed $12,500.00**.**  Holders of Class 5 Allowed Claims are unimpaired and are not entitled to vote for or against the Plan.

**Class 8 – Equity Interests**.  Equity interests shall be terminated on the Effective Date and shall not receive a distribution under the Plan on account of their interests.  Equity interests shall remain responsible for winding down the affairs of the Debtor subsequent to the Effective Date.  While Equity interest may be impaired, they are not entitled to vote.

TREATMENT OF NON-CLASSIFIED CLAIMS

Pursuant to § 1123(a)(1) of the Bankruptcy Code, the Plan does not classify Administrative Claims entitled to priority treatment under § 507(a)(2) of the Bankruptcy Code or Claims of Governmental Units entitled to priority pursuant to § 507(a)(8) of the Bankruptcy Code.  Article 2 of the Plan provides for the manner of treatment of such non-classified Claims.

**Administrative Claims.**  Administrative Claims are the costs and expenses of administration of this Case, allowable under § 503(b) of the Bankruptcy Code, other than Bankruptcy Fees.  Administrative Claims include Claims for the provision of goods and service to the Debtor after the Petition Date, the liabilities incurred in the ordinary course of the Debtor's business (other than claims of governmental units for taxes or interest or penalties related to such taxes) after the Petition Date, Claims of professionals, such as attorneys, brokers, appraisers, and accountants, retained pursuant to an order of the Bankruptcy Court, for compensation and reimbursement of expenses under § 330 of the Bankruptcy Code, and tax claims for the period from the Petition Date to the Effective Date of the Plan.

Each holder of an Allowed Administrative Claim shall receive cash in the full amount of its Administrative Claim.  It is estimated that the Administrative Claims total not more than $100,000.00 which consists of the Debtor's counsel's professional fees in the approximate amount of $25,000.00 and both Receivers' Administrative Claims on account of commissions and related fees of secondary appointees in the approximate amount of $75,000.00.  Specifically, it is

estimated that all outstanding administrative fees owed in connection with the Clarkson Receiver total approximately $25,000.00 and shall be paid by SDF. Similarly, it is estimated that all outstanding administrative fees owed in connection with the Linden Receiver total approximately $50,000.00 and shall be paid by Walworth respectively after they are offset against the Linden Receiver's bank account which currently contains not less than $41,000.00.

The Confirmation Order and the Plan shall provide that on or after the Effective Date (i) the Receivers shall be discharged and their bonds cancelled, and (ii) any secondary appointees to the Receivers in connection with either of the receiverships shall be relieved. The Receivers shall then be permitted to use the Confirmation Order to obtain a comfort order from the New York State Supreme Court, Kings County confirming the discharge pursuant to the Plan. All fees and expenses of the Receivers shall be paid from the Cash Contribution as well as the funds the Receivers are currently holding in their receivership accounts. If either Receiver is not holding sufficient funds to cover their commissions or their secondary appointees fees, such fees shall be paid from the Cash Contribution. The Confirmation Order shall provide that the Receivers and their secondary appointees shall turnover to the respective Secured Creditor and/or its nominee, all leases, and documents and other records with respect to the Properties.

Each Administrative Claim, shall be paid by the Disbursing Agent in Cash in full on (i) the later of the Effective Date, the date payment of such Claim is due under the terms thereof or applicable law, or three business days after such Claim becomes an Administrative Claim, or (ii) as may be otherwise mutually agreed in writing between the Disbursing Agent and the holder of such Claim, provided, however, that any Allowed Administrative Claim incurred by the Debtor in the ordinary course of its business shall be paid in full in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim and any agreements relating thereto.

Article 2 of the Plan sets a final date for the filing of Administrative Claims against the Debtor. The Administrative Bar Date is the first Business Day that is fifteen (15) days after Confirmation.

**Bankruptcy Fees.** All fees and charges assessed against the Debtor of its Estate under § 1930 of title 28 of the United States Code and any applicable interest thereon shall be paid by the Disbursing Agent in Cash in full as required by statute, and until the closing, conversion or dismissal of this case, whichever is earlier. The Disbursing Agent shall continue to be responsible for the payment of any such fees and charges. It is estimated that Bankruptcy Fees and charges will be approximately $12,000.00.

**Professional Fees.** 11 U.S.C. § 330 of the Bankruptcy Code sets the standard for the determination by the Bankruptcy Court of the appropriateness of fees to be awarded to Professionals retained by the Debtor in a case under the Bankruptcy Code. In general, bankruptcy legal services are entitled to command the same competency of counsel as other cases. "In that light, the policy of this section is to compensate attorneys and other professionals serving in a case under title 11 at the same rate as the attorney or other professional would be compensated for performing comparable service other than in a case under title 11." 124 Cong. Rec. H11091 (Daily ed. Sept. 28, 1978).

Reasonable compensation due to the Debtor's professionals pursuant to § 330 of the Bankruptcy Code, as determined by the Bankruptcy Court, shall be payable in full and in Cash on the Effective Date unless otherwise agreed to in writing between the holder of such claim and the Debtor and approved by the Bankruptcy Court.  It is estimated that the Debtor's professionals' compensation should not exceed $25,000.00.

## DISPUTED CLAIMS

Article 7 of the Plan contains a mechanism for resolving disputes concerning the amount of certain Claims asserted against the Debtor by any Entity.

**Time to Object.**  Unless otherwise ordered by the Bankruptcy Court, objections to the allowance of any Claim must be filed no later than forty-five (45) days after the Effective Date. Until the earlier of (i) the filing of an objection to a Proof of Claim or (ii) the last date to file objections to Claims as established by the Plan or by Final Order, Claims shall be deemed to be Disputed in their entirety if, (x) the amount specified in a Proof of Claim exceeds the amount of any corresponding Claim listed in the Schedules; (y) any corresponding Claim listed in the Schedules has been scheduled as disputed, contingent or unliquidated; or (z) no corresponding Claim has been listed in the Schedules.

## DISTRIBUTIONS UNDER THE PLAN

Article 7 contains provisions governing the making of Distributions on account of Claims and Interests.  In general, any payments, distributions or other performance to be made pursuant to the Plan on account of any Allowed Claim or Allowed Interest shall be deemed to be timely made if made on or within fifteen (15) days following the later of (i) the Effective Date, or (ii) the expiration of any applicable objection deadline with respect to such Claim or Interest, or (iii) such other times provided in the Plan. All Cash payments to be made pursuant to the Plan shall be made by check drawn on a domestic bank.

**Disbursing Agent.**  Kriss & Feuerstein LLP shall be the Disbursing Agent and shall make Distributions under the Plan for all claims against the Debtor's Estate. The Disbursing Agent shall not be compensated for services rendered under the Plan and shall not be required to secure a bond.  The Disbursing Agent shall not incur any liability, other than for gross negligence, willful misconduct, criminal conduct, or for any claim for liability pursuant to 28 U.S.C. § 959 in connection with carrying out its duties under the Plan, which liability shall be expressly limited to the period commencing from the date of the Disbursing Agent's receipt of the Cash Contribution and ending on the date that all disbursements contemplated by the Plan have been distributed.

Distributions shall be made: (1) at the addresses set forth on the Proofs of Claim or Proofs of Interests filed by such holders; (2) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim or Proof of Interest; or (3) at the address reflected in the Schedules if no Proof of Claim or Proof of Interest is filed and the Disbursing Agent has not received a written notice of a change

of address.  If the Distribution to the holder of any Claim or Interest is returned to the Disbursing Agent as undeliverable, no further Distribution shall be made to such holder unless and until the Disbursing Agent is notified in writing of such holder's then current address.

## UNCLAIMED DISTRIBUTIONS

Any Cash or other property to be distributed under the Plan shall revert to the Disbursing Agent and such creditor shall forfeit its right to receive any Distribution(s) under this Plan if such Distribution is not claimed by the Entity entitled thereto before the later of (i) 90 days after the Effective Date or (ii) 90 days after an Order allowing the Claim of that Entity becomes a Final Order or are otherwise Allowed.  Any such forfeited sums shall then be retained by the Plan Proponents.

## DISTRIBUTIONS WITH RESPECT TO DISPUTED CLAIMS

During the pendency of any objection to any Claim, no Distribution under the Plan will be made to the holder of such Claim.  However, there will be set aside and reserved on behalf of such disputed Claim such cash or property as the holder thereof would be entitled to receive in the event such Claim was an Allowed Claim on the date of such Distribution.  The Debtor may seek an order of the Bankruptcy Court estimating or limiting the amount of Cash or property that must be deposited in respect of any such Disputed Claims.  Cash held in reserve for Disputed Claims will be held in trust for the benefit of the holders of such Claims.

Within 15 days after the entry of a Final Order resolving an objection to a Disputed Claim, the Disbursing Agent shall distribute all Cash or other property, including any interest, dividends or proceeds thereof, to which a holder is then entitled with respect to any formerly Disputed Claim that has become an Allowed Claim.  To the extent practicable, the Disbursing Agent shall hold such cash in a segregated account in accordance with § 345 of the Bankruptcy Code, and may invest any cash or other property segregated on account of a Disputed Claim, Disputed Interest, undeliverable distribution, or any proceeds thereof; however, the Disbursing Agent shall be under no obligation to so invest such Cash or proceeds and shall have no liability to any party for any investment made or any omission to invest such Cash, other property or proceeds.

## SURRENDER OF INSTRUMENTS

No Creditor that holds a note or other instrument of the Debtor evidencing such Creditor's Claim may receive any distribution with respect to such Claim or Interest unless and until the note or other instrument evidencing such Claim is surrendered pursuant to the provisions of the Plan.  In the event an instrument evidencing a claim has been lost, stolen or mutilated, the Disbursing Agent may request reasonable affidavits and indemnification by a financially responsible party before making any distribution(s) to such Creditor.

## COMPLIANCE WITH TAX REQUIREMENTS

In connection with the Plan, the Debtor shall not be relieved of, and shall comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities, and distributions under the Plan shall be subject to such withholding and reporting requirements.

## EFFECTIVE DATE

The Effective Date of the Plan is defined as the Closing Date of the sale of the Properties.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Effective on and as of the Effective Date, all Executory Contracts and Unexpired Leases to which the Debtor is a party shall be deemed rejected in accordance with § 365 of the Bankruptcy Code, EXCEPT those pertaining to leases between the Debtor and residential tenants at the Property. The Plan Proponents do not believe that there are any executory contracts and unexpired leases which would be subject to rejection since all leases are believed to be between the Debtor and residential tenants at the Properties. For the avoidance of doubt, only residential leases between the Debtor and tenants at the Properties shall remain in full force and effect subject to their terms. In addition, on the Effective Date, the Disbursing Agent may provide the Plan Proponents, or their nominees, with an assignment and assumption of all residential leases at the Properties and the right to collect any and all rent arrears from existing tenants.

**Rejection Claims**. Allowed Claims arising from the rejection of any Executory Contract or Unexpired Lease of the Debtor pursuant to the Plan shall be treated as Unsecured Claims. A Proof of Claim with respect to any Unsecured Claim for damages arising from the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan must be filed with the Bankruptcy Court and served so that it is received by the Disbursing Agent within 15 days after the later of (i) the date of entry of a Final Order approving such rejection (unless such Final Order expressly provides a Bar Date with respect to such Claim, in which event no Proof of Claim with respect to such Claim shall be deemed timely unless it is filed with the Bankruptcy Court and served in the manner provided in such Final Order), or (ii) the date the Plan is Confirmed. Any such Claim not timely filed and served shall be forever barred from assertion and may not be enforced against either of the Debtor, the Plan Proponents (or their nominees), their successors or their respective Property.

## TRANSFER OF THE PROPERTY

Except as otherwise provided in the Plan, on the Effective Date all of the assets and Properties of the Debtor's Estate shall vest in the Plan Proponents, or their nominees respectively, free and clear of all Liens, Claims and encumbrances and the Debtor shall cooperate with the execution of any and all documents needed to facilitate the transfer of the Properties. On the Effective Date, any and all Liens, Claims and encumbrances that have not been expressly preserved under the Plan shall be deemed extinguished as of such date.

Furthermore, on the Effective Date or as soon as practicable thereafter, all rent arrears, leases, insurance claims and proceeds thereof to which the Debtor was entitled, shall be assigned by the Disbursing Agent to the Plan Proponent and/or its nominee respectively.

FUNDING

The Plan will be funded by moneys made available as a result of the Sale of the Properties, including the Cash Contribution and the Receivership Funds on the Effective Date, or as soon as practicable thereafter. A detailed breakdown of how the Plan Proponents intend to fund the plan is as follows.  SDF has escrowed with the Disbursing Agent, the sum of $94,000.00.  Similarly, Walworth has escrowed with the Disbursing Agent, the sum of $664,000.00.

In addition, sums contained in the Clarkson Receiver's account are currently estimated to be not less than $1,000.00.  SDF has been advised that claims by the Clarkson Receiver (and persons reporting to the Linden Receiver) total approximately $25,000.00.  Under the Plan, claims of the Clarkson Receiver and persons reporting to the Clarkson Receiver shall be paid in full in Cash by SDF on the Effective Date, leaving a remaining balance of Receivership Funds of $0.00.

Similarly, sums contained in the Linden Receiver's account are currently estimated to be not less than $41,000.00.  Walworth has been advised that claims by the Linden Receiver (and persons reporting to the Linden Receiver) total approximately $51,000.00.  Under the Plan, claims of the Linden Receiver and persons reporting to the Linden Receiver shall be paid in full first out of the Receivership Funds, and then from Cash, if necessary, leaving a remaining balance Receivership Funds of approximately $0.00.

The Plan Proponents have been further advised that Debtor's counsel's legal fees total approximately $25,000.00, and the estimated fees due to the Office of the United States Trustee upon a sale of the Property will total less than $12,000.00.

In order to pay all estimated Administrative Claims and quarterly fees due to the Office of the United States Trustee ($12,000.00), Priority Tax Claims (NYS) of $12,150.00, NY Claims (SDF) of $39,000.00, NY Claims (Walworth) of $529,000.00, General Unsecured Claims of $11,400.00, and Administrative Claims in the amount of $50,000.00 in full (which based upon filed and scheduled claims will not exceed $640,000.00), the Plan Proponents are prepared to utilize Receivership Funds from the Receivers and the Cash Contribution from the Plan Proponents, to fund the Plan.  The total cash required to pay holders of all Allowed Claims and Administrative Claims (even if the claim objections are resolved in favor of the claimants) is estimated to be no more than $640,000.00.  Any remaining funds after the payment to holders of Allowed Claims in Classes 1 through 8, shall be retained by the Plan Proponents.

The Debtor shall take all necessary steps and perform all acts to consummate the terms and conditions for the Plan. The Confirmation Order shall contain appropriate provisions consistent with § 1142 of the Bankruptcy Code, directing the Debtor and any other necessary

party to execute or deliver or to join in the extension or delivery of any instrument required to affect the Plan or to perform any act necessary to consummate the Plan.

Except as set forth elsewhere in the Plan, all payments required to be made under the Plan shall be made by the Disbursing Agent for disbursement in accordance with the terms of the Plan.

## PRESERVATION OF RIGHTS OF ACTION

The Debtor shall retain, and in accordance with its determination of the best interest of the estate, may enforce any claims, rights and causes of action (i) arising under §§ 544 through 550 of the Bankruptcy Code or (ii) belonging to the Debtor as of the Petition Date, or the Estate, and arising under any provision of state or federal law, or any theory of statutory or common law or equity.

## POST-CONFIRMATION OPERATING REPORTS AND UNITED STATES TRUSTEE'S FEES

The Debtor shall be responsible for the preparation and filing of monthly operating reports and post-confirmation status reports which post-confirmation status reports shall be filed until the closing of the Debtor's Chapter 11 Case by means of a final decree, dismissal or conversion of this case, whichever is earlier. Within 10 days of the Effective Date, the Disbursing agent shall file a closing report detailing all disbursements made at the respective closings of each of the Properties. All outstanding quarterly fees payable to the Office of the United States Trustee shall be paid by the Disbursing Agent until entry of a final decree.

## TRANSFER TAXES

Pursuant to § 1146(a) of the Bankruptcy Code, the initial issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer in connection with or in furtherance of the Plan (including any instrument executed in furtherance of the transactions contemplated by the Plan including but not limited to the sale of the Properties to the Plan Proponents) shall be exempt and shall not be subject to tax under any law imposing a Transfer Tax, mortgage recording tax or similar tax as set forth in the Plan. In connection therewith, the Plan Proponents shall have the protections afforded under the "good faith" purchaser provisions of § 363(m) of the Bankruptcy Code and all stay provisions under Bankruptcy Rule 6004(h) or elsewhere will be waived.

## REVOCATION OF THE PLAN

The Plan may be altered, amended, modified or withdrawn by the Plan Proponents at any time before substantial consummation of the Plan, as provided in §§ 1101(a) and 1127 of the Bankruptcy Code and Bankruptcy Rule 3019. § 1127 of the Bankruptcy Code authorizes the proponent of a plan of reorganization to modify such plan at any time prior to confirmation of the plan so long as the plan, as modified, continues to meet certain technical requirements of §§ 1122 and 1123 of the Bankruptcy Code with respect to the classification of Claims and Interests and the contents of a plan. Prior to Confirmation, if a Plan Proponent files

modifications to the Plan, pursuant to § 1127(a) "the plan as modified becomes the plan." No order of the Court is required to modify the Plan under the terms of § 1127(a); however, the proponent of a modification to a plan must comply with § 1125 of the Bankruptcy Code with respect to the plan as modified.

If any of the Plan Proponents revoke or withdraw the Plan, or if no Confirmation Order is entered, the Plan shall be null and void, and nothing contained in the Plan shall constitute a waiver or release of any Claims by or against, or any Interest in the Debtor in any further proceedings involving the Debtor.

## RETENTION OF JURISDICTION

The Plan contains detailed provisions providing for the retention of jurisdiction by the Bankruptcy Court over the Case for the purposes of, *inter alia,* determining all disputes relating to Claims or Interests and other issues presented by or arising under the interpretation, implementation or enforcement of the Plan.

## RISK FACTORS

Plan payments are to be made from the Sale proceeds which will come primarily from the Cash Contribution. There can be no assurance that the sale of the Properties will occur.

## CONFIRMATION OF THE PLAN

All Distributions to holders of Allowed Claims are contingent on the Plan being confirmed by this Court. Otherwise, the Debtor is not obligated to make the payments required hereunder.

## CONFIRMATION HEARING

The Bankruptcy Code requires that the Bankruptcy Court, after notice, hold a hearing to consider confirmation of the Plan. **The Confirmation Hearing is scheduled to commence on December _, 2014 at _____ in the United States Bankruptcy Court, 271-C Cadman Plaza East, Brooklyn, New York, Courtroom 3585.** The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the Confirmation Hearing.

The Bankruptcy Court has directed **that objections, if any, to confirmation of the Plan be filed and served on or before December ____, 2014.** Objections must be served upon (i) Counsel to the Debtor: Jeffrey Rosenberg P.C., 165 Eileen Way, Suite 101, Syosset, New York 11791 - Attn: Jeffrey Rosenberg, Esq., (ii) Counsel to the Plan Proponents, Kriss & Feuerstein LLP., 360 Lexington Avenue, Suite 1200, New York, New York, New York 10017 – Attn: Jerold C. Feuerstein, Esq., (iii) The United States Trustee, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014-9449 – Attn: William E. Curtin, Esq. and be filed electronically in accordance with the Court's ECF procedures.

## REQUIREMENTS FOR CONFIRMATION

At the Confirmation Hearing, the Bankruptcy Court will determine whether the requirements of § 1129 of the Bankruptcy Code have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan.  These requirements include determinations by the Bankruptcy Court that: (i) the Plan has classified Claims and Interests in a permissible manner, (ii) the contents of the Plan comply with various technical requirements of the Bankruptcy Code, (iii) the Plan Proponents have proposed the Plan in good faith, (iv) the Plan Proponents have made disclosures concerning the Plan that are adequate and include information concerning all payments made or promised in connection with the Plan and the Case, (v) the Plan is in the "best interests" of all Creditors and Interest Holders; and (vi) the Plan is feasible.  The Plan Proponents believe that all of these conditions have been or will be met prior to the Confirmation Hearing.

**Best Interest Test.**  The so-called "best interest" test requires that each impaired Creditor and impaired Interest Holder either (a) accepts the Plan or (b) receives or retains under the Plan property of a value, as of the Effective Date of the Plan, that is not less than the value such entity would receive or retain if the Debtor was to be liquidated under chapter 7 of the Bankruptcy Code.

To determine what the holders in each Class of Claims or Interest would receive if the Debtor were liquidated under Chapter 7, the Bankruptcy Court must determine the dollar amount that would be generated from the liquidation of the Debtor's assets in a chapter 7 liquidation case.  The amount that would be available for satisfaction of Allowed Claims against and Allowed Interests in the Debtor would consist of the proceeds resulting from the disposition of the Debtor's assets, augmented by the cash held by the Debtor.  Such amount would be reduced by the amount of any Claim or Claims secured by the Debtor's assets, the costs and expenses of the liquidation, and such additional Administrative Claims and Priority Claims that may result from the termination of the Debtor' business. Such value is then juxtaposed against the amount creditors are receiving under the Plan to determine if the value each impaired creditor is receiving is the same or more than such creditor would receive from a Chapter 7 liquidation on the Confirmation Date.

The costs of liquidation under Chapter 7 would become Administrative Claims with the highest priority against the proceeds of liquidation.  Such costs would include the fees payable to a Chapter 7 trustee, as well as those which might be payable to attorneys, financial advisors, appraisers, accountants and other professionals that such trustee may engage to assist in the liquidation.  In addition, Chapter 7 costs would include any liabilities incurred or assumed pursuant to the transactions necessary to effectuate the liquidation.  Moreover, claims entitled to administrative priority may arise by reason of any breach or rejection of any executory contracts entered into by the Debtor during the pendency of the Case in chapter 11.

After satisfying Administrative Claims arising in the course of the chapter 7 liquidation, the proceeds of the liquidation would then be payable to satisfy any unpaid expenses incurred during the time this Case was pending under chapter 11, including compensation for attorneys, financial advisors, appraisers, accountants and other professionals retained by the Debtor.

**Liquidation Analysis.** The Plan Proponents have concluded that the Plan provides to each Creditor and Interest Holder a recovery with a *present value* which equals the distribution that such person would receive if the Debtor were to be liquidated under Chapter 7 of the Bankruptcy Code. The Plan provides for the Debtor's reorganization, the payment of all of the Debtor's outstanding secured indebtedness, and 100% plus interest to holders of all other Allowed Claims. Since Creditors would not be entitled to receive more than 100% plus interest in a Chapter 7 liquidation, § 1129(a)(7) of the Bankruptcy Code is satisfied.

**Feasibility.** For the Plan to be confirmed, it must be demonstrated that consummation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor. This Plan calls for the sale of the Debtor's Properties to the Plan Proponents. Thus the Plan meets the feasibility requirements of the Bankruptcy Code as long as the Plan Proponents deposit the Cash Contribution in Escrow prior to the Confirmation Hearing.

**EFFECT OF CONFIRMATION**

**LIMITATION OF LIABILITY**

**11 U.S.C. § 1125(e) of the Bankruptcy Code, commonly referred to as the "safe harbor," protects persons acting in good faith, from civil claims arising in connection with solicitations of acceptances of plans of reorganization or participating in the offer, issuance, sale or purchase of a security under the Plan. Pursuant to § 1125(e), as set forth in Article 8 of the Plan, neither the Debtor, Plan Proponents or their respective nominees, nor any of their respective officers, directors, members, general partner, managers or employees (acting in such capacity), nor any professional person employed by any of them shall have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, Confirmation or consummation of the Plan, the Disclosure Statement or any other action taken or omitted to be taken in connection with the Plan except in the case of fraud, gross negligence, willful misconduct, malpractice, breach of fiduciary duty, criminal conduct, unauthorized use of confidential information that causes damages, or ultra vires acts. Nothing contained herein shall limit the liability of the Debtor' professionals pursuant to Rule 1.8(h)(1) of the New York State Rules of Professional Conduct. From and after the Effective Date, a copy of the Confirmation Order and the Plan shall constitute, and may be submitted as, a complete defense to any claim or liability released pursuant to Article 8 of the Plan.**

**ALTERNATIVES TO THE PLAN**

If the Plan is not confirmed by the Bankruptcy Court the alternatives may include (a) liquidation of the Debtor under chapter 7 of the Bankruptcy Code or (b) the formulation, promulgation and confirmation or an alternative plan of reorganization involving a sale to a different purchaser; or (c) the dismissal of the Debtor's case.

The Plan Proponents believe that the Plan provides a recovery to all Creditors and Interest Holders equal to or greater than would be obtainable in chapter 7 liquidation or foreclosure sale and believes that the Plan enables Creditors to realize the most value under the circumstances.

The Plan Proponents reserve their right to file an amended plan and/or disclosure statement.

## CERTAIN FEDERAL INCOME TAX CONSEQUENCES

The following summary of certain U.S. Federal income tax consequences is for informational purposes only and is not a substitute for careful tax planning and advice based upon the particular circumstances pertaining to each holder of an Allowed Claim. Each holder of an Allowed Claim is urged to consult his own tax advisors. This summary does not cover all potential U.S. federal income tax consequences that could possible arise under the Plan and does not address the Plan's U.S. federal income tax consequences for any holder of an Allowed Claim that is a partnership (or other pass-through entity) or otherwise subject to special tax rules.

The Plan Proponents have not requested any ruling from the Internal Revenue Service or any other taxing authority with respect to such matters nor will the Plan Proponents, with respect to the federal income tax consequences of the Plan, obtain any opinion of counsel. Consequently, there can be no assurance that the treatment set forth in the following discussion will be accepted by the IRS. The Plan Proponents offer no statements or opinions that are to be relied upon by the creditors as to the treatment of creditors' claims under the Plan. Matters not discussed in this Disclosure Statement may affect the tax consequences of the Plan on any particular holder of a Claim or Equity Interest

This summary is based upon the laws in effect on the date of this Disclosure Statement and existing judicial and administrative interpretations thereof, all of which are subject to change, possibly with retroactive effect. Holders of Allowed Claims should consult their own tax advisors as to the Plan's specific federal, state, local and foreign income and other tax consequences.

The tax consequences to Creditors and Interest Holders will differ and will depend on factors specific to each Creditor or Interest Holder, including but not limited to: (i) whether the Claim or Interest  (or portion thereof) constitutes a claim for principal or interest; (ii) the origin of the Claim or Interest; (iii) the type of consideration received by the Creditor or Interest Holder in exchange for the Claim or Interest; (iv) whether the Creditor or Interest Holder is a United States person or foreign person for tax purposes; (v) whether the Creditor or Interest Holder reports income on the accrual or cash basis method; (vi) whether the Creditor or Interest Holder has taken a bad debt deduction or otherwise recognized loss with respect to a Claim or Interest.

**THERE ARE MANY FACTORS WHICH WILL DETERMINE THE TAX CONSEQUENCES TO EACH CREDITOR OR INTEREST HOLDER.**

**FURTHERMORE, THE TAX CONSEQUENCES OF THE PLAN ARE COMPLEX, AND IN SOME CASES, UNCERTAIN. THEREFORE IT IS IMPORTANT THAT EACH CREDITOR OR INTEREST HOLDER OBTAIN HIS, HER OR ITS OWN TAX ADVICE REGARDING THE TAX CONSEQUENCES TO SUCH CREDITOR OR INTEREST HOLDER AS A RESULT OF THE PLAN.**

**THE DISCUSSION HEREIN IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY ANY CREDITOR OR INTEREST HOLDER FOR THE PURPOSE OF AVOIDING TAX PENALTIES THAT MAY BE IMPOSED ON A TAX PAYER. THE DISCUSSION HEREIN WAS WRITTEN TO SUPPORT THE TRANSACTIONS DESCRIBED IN THIS DISCLOSURE STATEMENT. EACH CREDITOR OR INTEREST HOLDER SHOULD SEEK ADVICE BASED UPON THE CREDITOR'S OR INTEREST HOLDER'S PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.**

### ADDITIONAL INFORMATION

Requests for information and additional copies of this Disclosure Statement and the other materials delivered together herewith and all deliveries, correspondence and questions, as the case may be, relating to the Plan should be directed to (i) Counsel to the Debtor: Jeffrey Rosenberg P.C., 165 Eileen Way, Suite 101, Syosset, New York 11791 - Attn: Jeffrey Rosenberg, Esq., (ii) Counsel to the Plan Proponents, Kriss & Feuerstein LLP., 360 Lexington Avenue, Suite 1200, New York, New York, New York 10017 – Attn:  Jason S. Leibowitz, Esq., (iii) The United States Trustee, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014-9449  or (iv) may be retrieved from the Court's web site at https://ecf.nyeb.uscourts.gov  (provided such party has PACER access) by searching Case No.: 1:14-41126-ess.

Copies of all pleadings, orders, lists, schedules, proofs of claims or other documents submitted in these cases are on file in the Office of the Clerk of the United States Bankruptcy Court, Eastern District of New York, 271 Cadman Plaza East, Brooklyn, New York 11201, and are available for public inspection Monday through Friday, between the hours of 9:00 a.m. and 5:00 p.m.

### CONCLUSION

The Plan Proponents believe that confirmation of the Plan is in the best interests of all Creditors.

Dated:   New York, New York
      November 5, 2014

**KRISS & FEUERSTEIN LLP**
360 Lexington Avenue, Suite 1200
New York, NY 10017
(212) 661-2900

By: *s/ Jason S. Leibowitz*
    Jerold C. Feuerstein, Esq.
    Kenneth P. Horowitz, Esq.
    Jason S. Leibowitz, Esq.

    *Attorneys for SDF8 CBK LLC &*
    *12-18 Walworth Street LLC*

**SDF8 CBK LLC**

By: *s/ Brian Shatz*
    Brian Shatz, Manager

**12-18 WALWORTH STREET LLC**

By: *s/ Mordecai Spira*
    Mordecai Spira, Member